The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial May it please the court. My name is Sandra Blevins of Betts and Blevins in Indianapolis, Indiana, and I represent Bridget Ford, a 20-year employee of the Marion County Sheriff's Department who was severely injured through no fault of her own while on law enforcement duty. She became permanently disabled from the accident and sought reasonable accommodations under the Americans with Disabilities Act that I will refer to as the ADA so she could perform her duties as a sheriff's employee. The district court unreasonably excluded evidence of such a material nature that a new trial is necessary. This excluded material evidence prohibited Ms. Ford from telling the jury the full story of her disability and the harassment inflicted because of her disability.  So I want to give you a few examples of the material evidence that distorted the outcome of the trial and that was excluded by the district court judge. First, the Marion County Sheriff's Department gave Ms. Ford a choice of the door, that is resign or be fired, or the dungeon, the lowest rung job in the basement of the jail making a third less than her deputy job. And the second example is the bait and switch. After Ms. Ford accepted the accommodations that the Marion County Sheriff finally offered her, they failed to ever train her supervisors and employees about Ms. Ford's disability and the ADA after promising to do so. And third, the district court cut off the evidence of 18 months of harassment that the Ashley Hendricks. So in essence, the district court siloed the evidence in this case in very distinct ways as if the evidence only applied to a particular claim instead of all of Ms. Ford's claims, in particular her harassment claim. Yes, Your Honor. As you know, when you've got some claims going forward to a trial, others that are resolved beforehand, sometimes it's difficult to manage for the trial. And if I recall correctly, you all on behalf of Ms. Ford moved in Lemony to exclude a great deal of evidence about those claims as to which summary judgment had been granted. Your Honor, what we moved for is for the references to summary judgment and specific claims that were lost not to be referenced at the trial, but we did not move for the evidence supporting our claim, which the claims that were actually going to trial, we did not move to exclude that evidence even it was discussed on summary judgment. Well, let me give you just, I'm expressing a little bit of sympathy for the district judge in this situation. Sure. Where, let's give the simplest example, a claim for disparate treatment discrimination goes out on summary judgment, a claim for retaliation goes forward to trial. You can't try the retaliation claim without some background about the underlying discrimination claim. At the same time, you don't want to try the whole discrimination claim. You don't want the jury to get tied up in that. That's a dilemma for a district judge, which leads me to think there's good reason to give him an awful lot of discretion in making those judgments. Well, Your Honor, I think the difference here is that when you have a harassment claim, the court is not supposed to silo the evidence as it did. The harassment, even if it's, as in the Isaacs case, the plaintiff in that case had two different departments, but she was with the same employer, and in that case, the court held that an employer are not vicariously liable for misconduct in the workplace. Employers are responsible for their own conduct, which is to say for how they respond or fail to respond after receiving notice that employees may be suffering disparate treatment at co-workers' hands. And the court has held that when you have a harassment claim, all of the incidents of harassment should be able to come in and be evidence of that harassment. In this case, the court cut off harassment that occurred before. Well, you're talking about harassment that the court found was not based on disability as far as the employer knew, correct? With respect to Ms. Hendricks. Not in the beginning. The beginning part about where there were three choices, the court held that that was relating to a different claim. I thought we were talking about the harassment. Well, we are talking about the harassment, but we believe that that is part of the harassment, what happened before the 14 months of discrimination, harassment by Ms. Ladd and Ms. Watts, but we also believe that it continued after with Vashney Hendricks. Now, the court did hold that it was not based on her disability, but we respectfully disagree, and we've also appealed that issue, because if you look at the evidence on that claim, there were several instances where, first of all, Ms. Ford testified in her declaration that she was harassed on the basis of her disability on almost a daily basis by Ms. Hendricks, and that she made jokes about her disability. I understand that point, and I understand that if you're right about Hendricks and summary judgment was wrong about that, then you need a new trial, but I was focusing on what you led off with, which was assuming that the summary judgment decision was correct, that Judge Lawrence unfairly kept evidence out, and that's where the Hendricks problem, I guess if there's no basis for employer liability on the friction between Hendricks and Ms. Hendricks and Ford, why put all that in front of the jury? Well, there was, I mean, our position is there was a basis for employer liability, because the discrimination, I mean, the harassment was based on her disability. Can we talk at some level of specificity about that evidence? The evidence of Ms. Hendricks? Because you outline it on page 28 of your brief, pages 28 and 29, and your adversary responds to it on page 29 of his brief. Sure. First of all... And I've pulled each of the documents. Okay, great. And I have both, all of them in front of me. All right, great. So first of all, we had Ms. Ford's testimony in her affidavit that the harassment occurred because of her disability, and there was almost daily jokes on harassment. No, yeah, I think what she said is that she recalled the one particular offhand comment that was made, I don't remember it exactly, and then the lieutenant that was present said, oh, she's just joking. That's correct. That was in September of 2015. That's the only particular reference to disability that I see in the record, and when you look at the four documents in particular that you draw our attention to in the brief, one is a complaint about how Hendricks performed her job with no reference whatsoever to disability anywhere in the memo. Another is a complaint about Hendricks leaving early from work, no mention of disability. There's one about an argument that the plaintiff got into with Hendricks, no mention of disability. And there's another about, what is it, using hand cream or something that has no mention of disability. Your Honor, if you'll look at the memo that was written on June 22nd of 2016, which was states in there that, again, several times she's saying that Bashley was laughing at the time about having caught carpal tunnel syndrome, and you'll notice in that paragraph she said, I explained to her again. And then at the third paragraph it said, I have said before that I do not feel that I have to justify to her that I am disabled. Again, indicating that this has happened several times. And then in the last paragraph it says, I have asked for his assistance on more than one occasion. And this is her supervisor, Johnson, about, and these are specifically about disability issues. She didn't have to put all of her complaints in writing. She put, as referenced in this written memo, though, in June of 2016, which the court only gave as one incident, it clearly references that this is multiple times that Bashley Hendricks has harassed her on the basis of her disability. And the court did not give credence to the testimony in this memo that talked about the multiple times that she had been harassed by Ms. Hendricks on the basis of her disability. I mean, the- Strictly speaking, that's hearsay, right? Did she testify to the effect that she had made prior complaints about disability harassment by Hendricks? She did testify to that. I'm not sure if it was in her affidavit, but at trial the court wouldn't let it in. So we weren't allowed to, I mean, despite many, many objections to the court not allowing this evidence in, and in addition, the opposing side opened the door to much of this evidence and the court still would not allow it to come in. So I do believe, though, that Ms. Ford specifically testified to this, and I believe that she also testified to it in her affidavit on summary judgment, but the court at trial would not let evidence of this nature come in, which is precisely the problem that we have, that this harassment started before the court allowed the evidence to come in, and it continued for 18 months after he allowed the evidence in. So that we understand correctly, the June 26th, 22nd, 2016 memo you referred to? Correct. Wasn't Ms. Hendricks transferred very shortly after that? She was transferred a month after that. That is correct. But you will notice in that memo, though, Ms. Ford indicated that she had been complaining about this multiple times, and in addition, Your Honor. Yes, and that's hearsay. Right? It would not have been hearsay if Ms. Ford would have been allowed to testify about it because it would have been evidence from a party opponent. No. I don't think that's the way that works. But if she indeed testified that the contents of that were true, that certainly would be admissible evidence. Correct. But she wasn't allowed to testify about it, and we weren't even allowed to get the exhibit in evidence at trial. And in addition, you know, Ms. Ford was disciplined in July of 2015 for having complained about Ms. Hendricks' harassment and was told by her supervisors that she was going to be hit in the pocketbook if she complained any further. So it was very difficult for her to manage whether she should complain about Ms. Hendricks when they told her she was going to be hit in the pocketbook. That means that she's going to be demoted and make even less money than she already was or that she was going to be fired. And so they chilled her reporting of this harassment with this discipline that they gave her. Counsel, your time is ticking down, and you said the other category of evidence in your briefs, the other category of evidence that you say was improperly excluded is the perceived failures in the interactive process. Correct. But that's not a separate claim, of course. Right. And I'm not clear on what the nature of your argument is about the judge's exclusion of that evidence as creating jury confusion and unnecessary delay because of its marginal relevance. Well, we would take issue with the relevance being marginal because we believe that that is part of the harassment that Ms. Ford suffered. I mean, harassment, you know, is not, it may be done by individuals, but the claim is against the employer. And it shows that the employer harassed Ms. Ford about her disability from the time she became permanently disabled. And so it shows more harassment. That's why we believe that the evidence was relevant and should have been admitted because it is evidence of harassment. And not just, as the district court did, siloed the evidence into these claims as being, oh, that's just part of the interactive process. But that also shows that they were antagonistic toward the ADA, and, you know, that is one of the reasons why Ms. Ford should have been allowed to get that evidence in. In addition, we have the jury who found that Ms. Ford had been harassed, but just not on the basis of her disability. And we believe that if this additional evidence could have been brought in about her disability and the additional harassment that she suffered at the hands of the Marion County Sheriff's Department, the jury would have had that context. It would have seen that the Marion County Sheriff's Department, it wasn't just about Carol Ladd and Eva Watts, who may, the Sheriff's Department said had a personality conflict with Ms. Ford. You know, that could sell to a jury unless the jury knows that the Marion County Sheriff's Department, toward her, every minute along the way, every time she tried to say anything about the ADA, tried to get an accommodation under the ADA, and there continued to be these constant daily barbs at her and jokes at her about her disability. And if the jury could have heard the full evidence about the harassment that she suffered, then the jury could have gotten over that hurdle about it being harassment on the basis of her disability. And that's what we believe is fundamentally wrong about what the District Court did by excluding that evidence. In addition, the District Court also didn't allow in the evidence about the accommodations that the Marion County Sheriff's Department did not provide to Ms. Ford. So he allowed the Marion County Sheriff's Department to talk about all the accommodations they provided, but would never allow us to discuss the ones that she didn't provide, they didn't provide. For example, they promised to train her supervisors about her disability. And even though they put that in writing, and Ms. Ford followed up with them several times about doing so, they never, ever trained her supervisors about her disability or the ADA. And what we know is that when an employer tells a supervisor about an employee's disability and how she should be treated, that's far different than Ms. Ford telling her supervisor that very same thing. It carries weight. It carries gravitas. And that is what the Marion County Sheriff's Department failed to do, even though they agreed to do so. And the court never allowed that evidence in that they never failed, they never trained her supervisors as they promised to do and did not do. The other evidence that the Marion County Sheriff's Department opened the door to that they never, the court never allowed us to address in opening arguments, during testimony and in closing arguments, they talked about Ms. Ford having chose to work as a visitation clerk. But that's not what happened, and the court would never allow us to rebut that evidence that she chose to work in that position. What actually happened is that she was given a choice to shadow two jobs, and she chose the visitation clerk job as between these two low-level jobs as being the only one that would accommodate her disability. But it's not as if she chose to work as a visitation clerk, and so therefore, you know, anything that the Marion County Sheriff's Department did in connection with her employment or by not promoting her was somehow okay because she chose to work as a visitation clerk. Is that a challenge to the summary judgment ruling? One of the things that's a little bit difficult is to try to keep track of, there's so many different pieces of evidence you're talking about. Do they relate to the summary judgment rulings trial? Well, primarily what I'm talking about right now. Because I thought on working in visitation, it was visitation, you know, for lack of a better way to put it, came about by process of elimination. They were looking at what jobs were open in the facility at the time. That was one that was open, and that was one that they determined she was qualified to do. And that's why that three-choice meeting happened. No, actually, the three-choice meeting happened before. I thought they put a choice, they said, look, this is what we got available for you. Here's what they told me. Take it or leave it. Here's what happened. Before they had talked to her or had any discussions with her at all, they knew for a couple of months that she was permanently disabled. They had this three-choices meeting, which said you can resign, be fired, or you can work as a main control clerk, which is different than a visitation clerk. It was the lowest level position in the jail. And then after that, Ms. Ford said, I don't think I can work that main control clerk job. It does not fit with my disabilities. They kept telling her that's the only job we have, even though we know, and there's evidence in the record, that they had other jobs available. She continued to say, I want to work. I want to work. I want to work. Finally, she said, all right, I'll accept the main control clerk job. This is after months of them saying, well, this is the only job we have. When she arrived on September 30th for her first day back to work, they said, well, we have these two other jobs that maybe you could work, book out and visitation clerk, and then you can go and shadow those jobs and see if you think those jobs would work for you. She shadowed those two jobs and selected from those two, the visitation clerk, because that was the only one that could accommodate her disabilities at that point. Okay. So with that version of events, is the error at summary judgment? Is it at trial? Is it at both? I believe it's definitely at trial, but at summary judgment, the court granted... Is it the point at trial that this is context evidence? Well, it's not just context evidence. It's also evidence of harassment. But at very least, it's background evidence on her claim of harassment. Would you like to save some time for rebuttal? Yes, I would, Your Honor. Okay. Thank you. Thank you. Mr. Overholt.  I'm Tony Overholt here on behalf of the Supreme Court. And I'm here to speak on behalf of the Marion County Sheriff's Office. The district court properly limited the trial in this case to the hostile work environment claim involving Carol Ladd and Eva Watts, in part because the plaintiff, as Judge Hamilton pointed out, moved to exclude the evidence of Vashney Hendricks before the trial started. In addition, the jury verdict on that claim should be affirmed because there was no reversible error resulting from the court's instruction number 20. First, I want to address this claim asserted by the plaintiff that somehow evidence of the Sheriff's Office attempt to accommodate should have come in because it was evidence of harassment. Quite frankly, that claim just baffles me. The parties engaged in the interactive process to try to find her a position that would accommodate her disabilities. That's exactly what the Sheriff's Office did. It found a position that accommodated her. I think her argument is that that process was a sham and, therefore, the evidence was relevant to the harassment claim. That's as best as I can understand it, but then we simply are confronted with a discretionary decision by the district judge to exclude that evidence because it would create a mini-trial within the trial about what actually happened on something that has marginal relevance. I think as to the notion that somehow the job was a sham or this process was a sham, it ignores the fact that she was accommodated. The record reflects, and there are statements from Ms. Ford in the record, that she liked the job and visitation, she could do the job and visitation, and that she performed the job admirably during the 16 or 18 months she was in it. So I don't know how that could possibly be considered to be a sham when she got the accommodation and did well at it and appreciated it. Along those lines, Mr. Overholt, you, I think, addressed in your brief the Hendricks-Robinson case against Accel and Dalton against Subaru Isuzu, where the point—there's language in some of our opinions to the effect that the employer needs to consider the whole range of available positions, and it's not clear to me that that happened. What we're hearing from the plaintiff is maybe if you take a snapshot—I'm rephrasing—but if you take a snapshot this week, here are the two vacant positions, but if you look over a period of several months, there's turnover in the dispatch unit, there's turnover in the warrants section of the sheriff's office, etc., and that the sheriff's office should have looked at more options. The number of and kinds of positions that are available given her limitations is very limited. For example, you mentioned dispatch. I note that Ms. Ford, during her entire time, never applied for a dispatch position. The reason for that is performing as a dispatcher would not have fit her limitations. The position of dispatcher involves a lot of data entry skills, and it is my understanding, based on the record in this case and based upon her deposition, that is something she simply physically could not do. So the—and that was also— Because of the hand injuries? Yes. Okay. Yes. In fact, even in visitation, she required—and the sheriff's department accommodated this request—she needed a hands-free phone because it was difficult for her to hold the receiver. Because of that, dispatch just wasn't something that was available for her. And the other positions, we just were limited in what there was. Her hand injury was very, very severe, and it greatly limited her ability to function. Can we talk about the hostile work environment claim a bit? One thing that I think she may be right about is viewing the relevant period as the period during which she worked in the visitation unit or visitation department, whatever we call it. And the experience with Hendricks was clearly miserable. The record is abundantly plain on that point. But what I have trouble with is looking at the particular pieces of evidence that were brought forward regarding her experience with Hendricks and linking it to the disability. And I don't know if you want to comment. Your adversary was emphasizing the June—was it the June 2016 memo or writing, if you want to comment on that. I will. The timeline of events was that she was initially assigned to visitation and was there for approximately 14 months. And the employees that she claimed were harassing her based on her disability were Eva Watts and Carol Ladd. And the jury said, or the judge said, there has to be a trial on that issue. I accept that. That's okay. We had the trial and there was a termination that she was harassed, but not based on disability. Those two people were removed from the visitation area at the end of December. Therefore the harassment that she experienced ended. Vashney Hendricks came in in January of 2015. As you pointed out, Your Honor, the evidence of any disability-related harassment from Vashney Hendricks is all but non-existent. The district court summarized that point in footnote 17 of its opinion, where it pointed out problems with the lack of proof by the plaintiff on disability. I think it's also important to note that throughout the district court's opinion, plaintiffs were criticized extensively for misquoting and misciting the record and asserting that there was evidence of disability discrimination when there was not. And again, footnote 17 and several of the other footnotes to the opinion point that out very clearly. As to the June 22, 2016 memo, when that occurred, Ms. Hendricks was moved. That was it. There was a problem and she was moved. Because of that, the district court looked at the evidence on the whole involving Ms. Hendricks and determined that there was not sufficient evidence that the harassment that was due to disability. Therefore, it was properly kept out. And I think that is within the trial court's wide discretion to manage the trial and manage the evidence. Given that view, how do you think, if we were to agree with that, how should we address the Bright case in our opinion in this case? I think the way to harmonize those cases is to acknowledge that even if there is a claim of hostile work environment that goes forward, the district court still has an obligation to look at the evidence to see whether the evidence is tied to or relevant to the claim. What the district court did in excluding that evidence was simply to say there is not evidence of a connection between Voshney Hendricks' conduct and anything related to disability. And I don't think that's inconsistent with Bright. Relatedly, I'm puzzled by the separation of the question of harassment from the question of disability harassment. The only thing that's relevant for the jury to decide in a hostile work environment claim is whether there was harassment on the basis of disability. And I didn't go and look at the special verdict questions that were put to the jury, but as you've described it, as your opponent has described it, the jury was asked to decide sort of a free-floating question about whether there was harassment. They were asked three questions. Was there harassment? Okay, why was that delinked from disability harassment? Because general harassment is utterly irrelevant. What we're talking about is disability harassment, and jurors have no way to evaluate and no reason to evaluate whether there was harassment generally speaking, and there's no definition of that. What's important is whether there was disability harassment. So I'm not sure why the judge, or perhaps he just accepted the verdict form submitted by the parties, but why the parties would separate out those two questions. That's not an appropriate way to structure a special verdict form. I think the parties separated out those three elements because that's how they understood the jury would have to decide the claim. And I will say there was no objection, at least from what I recall. There was no objection. I understand. This is not an issue on appeal. Right. It's a point that I'm raising about how to structure special verdict questions in hostile work environment discrimination claims. Free-floating questions to the jury about harassment in general are not appropriate. What's important is whether there was disability on the basis, or whether there was harassment on the basis of disability. And what we know, based on the verdict form as it was written, was that the jury determined nothing that occurred was because of her disability. That we know. Whether that should have been parsed out into three questions or not, the jury did answer that question in the defendant's favor. Understood. Mr. Overholt, could I ask you, you mentioned a moment ago that Watts and Ladd were transferred in, I think it was December 2014? I believe that's right, yes. And you had asserted in your brief that that was a disciplinary measure. Is there evidence of that? Now, they were moved in response to these issues. And there became quite the side argument about whether that was disciplinary or not. What I think is safe to say is that they were moved in response to these issues. Whether it was a disciplinary transfer or not became a matter of great debate. I don't think the record supports that it was a disciplinary transfer. Okay. Thank you. I would say that. Unless there's something else, I have nothing further for the Court. Thank you. Thank you. Ms. Blevins. Thank you, Your Honors. I want to address one thing that the Court raised about Vashti Hendricks and the discrimination. And I wanted to point out that one more time, during the discipline that she received for complaining, she was also told, we're not moving anybody else. Which would suggest that they knew this was about disability and because they just transferred Carol Ladd and Eva Watts out of the department, and six months later they're telling Ms. Ford, in discipline, that we're going to hit you in the pocketbook if you complain again and we're not transferring anybody else out of here. So, I believe that that further supports that it was based on disability and the reason why that discrimination should come in. In addition, I believe that the evidence about the training that the supervisors were supposed to receive, I believe that that was specific evidence that should have been allowed at trial and shown that the Sheriff's Department did not accommodate Ms. Ford as they promised to do by providing that training and that information to her supervisors so that they would receive the training they need on how to handle these ADA issues and these complaints that she was making about disability. And if they had provided that training and we could have gotten that evidence before the court, I believe that it would have made a difference in the outcome of the trial. And also, we believe that a new trial should be ordered based on the court not allowing evidence of all the harassment that Ms. Ford was subjected to during her appointment. Thank you. Your time has expired. Thank you, Your Honor. Our thanks to all counsel. The case is taken under advisement. All right, we'll move to our second case this morning, the nominee, Indian Boy.